UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD CADOURA,

    Plaintiff,

v.

CITY OF RIVERVIEW, et al.,

    Defendants.

    _____/

Case No. 2:17-cv-13360

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [9, 12]

Plaintiff Richard Cadoura claims Defendants harassed and discriminated against him in violation of Title VII. Cadoura is a firefighter for the City of Riverview which, along with its fire department and a handful of employees, are the Defendants. They have moved to dismiss the complaint on several grounds. For the reasons below, the Court will grant the motions in part and deny them in part.

### STANDARD OF REVIEW

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court will view the complaint in the light most favorable to the plaintiff, presume the truth of all well-pled factual assertions, and draw every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's

factual allegations are true or not," then the Court must dismiss it. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## BACKGROUND[1]

I. <u>Employment at the Fire Department</u>

Richard Cadoura began working for the Riverview Fire Department in April 2008, and his tenure there has been riddled with disputes. To begin, Cadoura is "one of the only employees of Palestinian descent," and coworkers would often make "derogatory comments about people from the Middle East," suggesting, for instance that, "we need to blow those f***** up[.]" ECF 2, PgID 28; ECF 20, PgID 361. Although the complaint is not entirely clear on the timing or frequency of those comments, it seems the comments began no later than March 2012 and continued thereafter. *See* ECF 2, PgID 28–29.

Cadoura also experienced ongoing assaultive behavior and comments from a coworker, Defendant Donald Meyer. On two occasions, Meyer "put his hands over Mr. Cadoura's mouth, forced Mr. Cadoura's head back, pinned Mr. Cadoura so he could not get up, and put his lips over his hand that was covering Mr. Cadoura's mouth." *Id.* at 29–30. Captain Bill Masserant was present both times and, after one occasion, when Cadoura asked him "what is wrong with [Lt. Meyer]?" Masserant replied, "maybe he wants you to go upstairs and give him [oral sex]." *Id.* at 29. From time to time, Meyer would also "stare at Mr. Cadoura and smack his lips with his tongue." *Id.* at 30. Cadoura lodged "multiple internal complaints" over time, but Meyer's actions apparently only intensified, so Cadoura eventually "filed an incident report with Human Resources" in February 2016.

---

[1] Under Rule 12(b)(6), the Court assumes the truth of facts pleaded in the Complaint. The Background is not a finding of any fact.

*Id.* at 31. The Department held a hearing soon after and determined that his allegations were unfounded. *Id.* at 32.

Cadoura says he also ran into trouble for reporting misbehavior. For instance, in July 2015, he reported to Chief Clifford Rosebohm "that Deputy Chief Pool was having a sexual relationship with a probationary firefighter," and subsequently "the harassment intensified." *Id.* at 30. And around May 2016, Cadoura told Pool that he saw Meyer commit a "timecard irregularity." *Id.* at 32–33. The next month, after a spat about Cadoura's late arrival one day, Pool told Cadoura he was suspended pending a hearing on allegations of insubordination. *Id.* at 33–34. Cadoura was fired the following month, on July 28, 2016.

II. EEOC Filing

Cadoura eventually reported his experiences to the Equal Employment Opportunity Commission (EEOC), but the parties dispute when and how that occurred. According to the Complaint, Cadoura filed a charge of discrimination "[o]n or about May 23, 2017[.]" ECF 2, PgID 35. Then on May 30, 2017, the EEOC "sent [Cadoura] a charge of discrimination." *Id.* Finally, on July 17, 2017, the EEOC sent Cadoura "a notice of his right to sue[.]" *Id.* Defendants essentially agree with those dates, although they argue that Cadoura filed his charge on May 30. *See* ECF 12, PgID 143. Importantly, they provided a copy of the EEOC document in support of the dates. ECF 12-4, PgID 166; *see also Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (acknowledging that a court may consider documents attached to a motion to dismiss if they are referred to in the complaint and central to the claims).

In his response brief, Cadoura mentioned for the first time that he in fact visited the Detroit EEOC office much earlier than May 23, 2017. He explains that on December 19,

3

2016, he filled out an intake questionnaire but the "unnamed counselor" told him that "she did not believe [he] had a case based upon what [he] had written." ECF 19, PgID 233. So she gave him the names of attorneys he could contact and told him she "would hold on to his questionnaire until he contacted an attorney so it would already be on file." *Id.* The only evidence of those statements, however, is Cadoura's affidavit, dated two months after Defendants filed their motion. *See* ECF 19-2, PgID 255.

According to Cadoura, he was "[n]ot certain whether his December complaint . . . was sufficient," so he returned to the EEOC office and filled out another intake questionnaire. ECF 19, PgID 233. Cadoura has produced a copy of the form, which is signed and dated May 23, 2017. ECF 19-4, PgID 287. In it, Cadoura indicated that he had not previously filed a charge in this matter with the EEOC or another agency and confirmed that he had an attorney. *Id.* On the same page, the form also stated, "Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire." *Id.* The form stated the relevant timeline for filing charges and explained, in bold print:

> If you do not file a charge of discrimination, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2*.*

*Id.* (emphasis omitted). Cadoura checked Box 2, indicating that he wanted to file a charge of discrimination and authorizing the EEOC to take action. *See id.* He then turned in the form.

About one week later, the EEOC sent him a letter. It began: "This is in response to your correspondence received on December 19, 2016, in which you alleged employment discrimination," and it directed Cadoura to sign and return the enclosed "Charge of

4

Discrimination" form within 30 days. ECF 19-5, PgID 293–94. The form states that the earliest date of discrimination was December 1, 2014 and the latest was July 28, 2016. At the end, it provided a space for Cadoura to sign, which would confirm the truth of the form's contents and confirm that he wanted the charge to be filed with the EEOC. *Id.* at 295. The typed date beside Cadoura's signature is May 30, 2017. ECF 12-4, PgID 166. According to Cadoura, he faxed the signed document to his attorney on July 7, 2017 and his attorney then faxed it to the EEOC. ECF 19-2, PgID 254.

On July 27, 2017, Cadoura received a right-to-sue letter from the EEOC dated July 17, 2017. ECF 19-6, PgID 304. He filed the instant suit 78 days later, on October 13, 2017. ECF 1.

## DISCUSSION

I. <u>Timing of the Charge</u>

Before an aggrieved employee can bring a discrimination claim under Title VII, he must comply with certain procedural requirements. First, he must timely file a charge of discrimination with the EEOC. The general deadline to file the charge is 180 days "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1), but because Michigan participates in a work-sharing arrangement with the EEOC, the deadline for filing is 300 days after the conduct, *Schoneboom v. Michigan*, 28 F. App'x 504, 505 (6th Cir. 2002) (citing 42 U.S.C. § 2000e-5(e) and *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 111 (1988)). In any event, if the EEOC chooses not to take further action, it notifies the employee of its decision and the employee then has 90 days to file suit. *Id.* § 2000e-5(f)(1).

In his Charge of Discrimination document, Cadoura identified July 28, 2016 as the latest date that the complained-of discrimination took place. ECF 12-4, PgID 166. Based on that date, the latest Cadoura could have filed a charge was May 24, 2017. The charge document, however, is dated May 30, 2017. By that timeline, Cadoura's charge was untimely by six days.

Cadoura argues otherwise. He insists that he truly filed his charge during his December 19, 2016 trip to the EEOC office. In support, he points to the EEOC letter sent "in response to your correspondence received on December 19, 2016[.]" ECF 19-5, PgID 293–94. Alternatively, Cadoura contends that he effectively filed his charge when he submitted a second intake form out of "an abundance of caution." ECF 19, PgID 241. The form is dated May 23, 2017, one day before the deadline, and Cadoura apparently submitted it that same day.

The Sixth Circuit employs a three-part test to determine whether an EEOC filing constitutes a "charge" for the purposes of administrative exhaustion. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 509 (6th Cir. 2011). First, the filing must be submitted under oath or penalty of perjury. *Id.* Second, it must contain information that is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of[.]" *Id.* And third, an "objective observer" would have to "believe that the filing taken as a whole suggests that the employee requests the agency to activate its machinery and remedial processes[.]" *Id.* (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 398, 402 (2008)) (quotation marks omitted).

As an initial matter, the Court cannot consider Cadoura's affidavit in evaluating Defendants' motions to dismiss. *See Mediacom Se. LLC v. BellSouth*

6

*Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012) ("A district court is not permitted to consider matters beyond the complaint."). But even so, the questionnaire Cadoura allegedly filled out in December would fail the test. To begin, there is no evidence that the questionnaire was submitted under oath or penalty of perjury. Cadoura has not provided a copy of the questionnaire, but the one he completed in May does not require the submission to be made under oath. *See* ECF 19-4. Admittedly, that defect could have been cured by a subsequent, related filing, see *Williams*, 643 F.3d at 509, but there is a more compelling reason to reject the December date: no objective observer would believe that Cadoura was requesting the agency to "activate its machinery" through the December questionnaire. By Cadoura's own admission, the EEOC was waiting for him to take further steps before doing anything with his questionnaire. ECF 19, PgID 233. Moreover, the EEOC took no action between December and the following May, after Cadoura submitted another questionnaire. The charge was not effectively filed in December 2016.

The next question is whether Cadoura effectively filed his charge on or before May 24, 2017. The Court is persuaded that he did. Although the signature on the questionnaire was not made under penalty of perjury, the form did not suggest that was necessary, and the subsequent, formal charge document does contain a validated signature. Consequently, the validation requirement is satisfied. *See Williams*, 643 F.3d at 509. The questionnaire is also adequately precise: it names the parties and the alleged discriminatory events. *See* ECF 19-4, PgID 288–291. Finally, an objective observer would believe that Cadoura was asking the EEOC to activate its machinery and remedial processes. Cadoura checked the box affirming that he wanted to file a charge and

7

authorized the EEOC to look into the matter. *Id.* at 287. And in fact, the EEOC did begin the process: it sent the unsigned charge document to the Riverview Fire Department even before Cadoura was given the chance to sign it. *See* 19-5, PgID 293. Cadoura's charge was therefore timely.

But the question is: timely as to what? The charging document makes out two types of claims: retaliation and harassment, *see* ECF 19-5, PgID 295, and it dates the alleged discrimination from December 1, 2014 to July 28, 2016, the date of Cadoura's termination. Because Cadoura did not file his charge until May 23, 2017, he can pursue only claims about or related to acts that occurred within the preceding 300 days—that is, on or after July 27, 2016. The Court will therefore proceed with that bar in mind.

II. <u>Title VII Claims</u>

Title VII creates two different types of actions: (1) discrete discriminatory acts, and (2) claims alleging a hostile work environment. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993–94 (6th Cir. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113–14. In contrast, a hostile work environment claim "is composed of a series of separate acts that collectively constitute one "unlawful employment practice.'" *Id.* at 117 (quoting 42 U.S.C. § 2000e–5(e)(1)). When a plaintiff alleges the latter type of claim, he must file his EEOC charge within 300 days of "an act contributing to the claim" and a court can consider "the entire time period of the hostile environment[.]" *Id.*

With those distinctions in mind, the Court takes each of the Title VII counts in turn.

A. Retaliation (Count I)

Cadoura asserts that he engaged in protected activity and defendants retaliated against him, but Defendants rejoin that most of his allegations are not actionable. The complaint describes the protected behavior as, "filing multiple work-related grievances detailing specific factual, and embarrassing, allegations against Defendants and, more specifically, Defendants Lt. Meyer and Deputy Chief Pool." ECF 2, PgID 36. The complaint lists four retaliatory actions:

   a. Creating an atmosphere of unworkable hostility at Mr. Cadoura's workplace;

   b. Sexually harassing Mr. Cadoura with forcible offensive touching;

   c. Insulting and degrading Mr. Cadoura on the basis of his national origin; and

   d. Suspending and subsequently terminating Mr. Cadoura because he engaged in protected activity.

*Id.* at 37. Defendants contend that because Cadoura did not file his charge with the EEOC until June 2017, the only retaliatory action he can assert is his firing; the rest are time-barred and unexhausted.

The Court agrees. Cadoura alleges many forms of retaliation, from Defendant Meyer's touching, to the remarks about his national origin, to being passed over for a promotion and eventually fired. *See* ECF 2, PgID 37. But the incidents are just that: incidents. Accordingly, they are properly construed as "discrete acts" of retaliation and thus each one begins its own 300-day clock. *See Morgan*, 536 U.S. at 113–14. By that measure, the only retaliatory action that was timely charged was Cadoura's termination. Accordingly, the Court will deny the motion as to Count I, but permit Cadoura to proceed only on the claim that he was terminated in retaliation for reporting misconduct.

B. Hostile Work Environment (Count III)

Cadoura asserts that Defendants created a hostile work environment. In support, he points to many of the allegations that compose his other Title VII claims; namely, that fellow firefighters harassed him about his national origin and Meyer's repeated sexual actions that "forced him to constantly be on watch for Lt. Meyer's next assault." ECF 2, PgID 39. As with Count I, Defendants aver that the hostile work environment claim is time-barred and, as before, the Court agrees.

Not every illicit action that contributes to a hostile-work-environment claim must fall within the 300-day window—but at least one must. Unlike discrete acts, which have individualized charging deadlines, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e–5(e)(1)). In those cases, at least one "act contributing to the claim" must occur within the filing period. *Id.* Courts must therefore consider whether complained-of actions "are part of the same actionable hostile work environment practice[.]" *Id.* at 120.

As noted, Cadoura can proceed only on actions taken by Defendants on or after July 27, 2017. Although he generally asserts that the comments about his national origin and Meyer's sexual actions occurred throughout his employment, the latest particular allegation was in February 2015. *See* ECF 2, PgID 30, ¶ 31. The succeeding paragraphs suggest that the harassment continued to occur, but even so, the latest date would be sometime in February 2016. *See id.* at 31, ¶ 46. The hostility that Cadoura allegedly suffered when he arrived late on June 26, 2016 is also outside the 300-day deadline. In sum, the complaint fails to identify any particular act on or after July 27, 2016 that was

10

part of the alleged "actionable hostile work environment practice." Accordingly, Count III must be dismissed.

### C. Sexual Harassment and National-Origin Harassment (Counts V and VII)

Although Cadoura mentions sexual harassment and national-origin harassment in the context of his other counts, he also alleges each as its own distinct count. But both counts must fail for the same reason. None of the allegations concerning sexual harassment or harassment based on national origin occurred on or after July 27, 2016. Accordingly, Counts V and VII must be dismissed.

### III. The State Law Claims

In addition to the Title VII counts, the complaint contains three analogous counts brought under Michigan's Elliot-Larsen Civil Rights Act (ELCRA), as well as one Michigan tort claim. As pled, the ELCRA counts plainly relate to the Title VII claims such that "they form part of the same case or controversy" and thus fall within the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a). The Court may, however, decline to exercise that jurisdiction if a state-law claim "substantially predominates over" a Title VII claim. *Id.* § 1367(c)(2).

And that is the case here. The Court is dismissing all but one very narrow Title VII count. One of the state law counts (Count IV) is directly analogous, but the others are not. If the Court solely focuses on the retaliation claims, then discovery, motions for summary judgment, and trial will be singularly focused on a discrete issue: whether Cadoura's termination was retaliatory. In contrast, if the Court exercises supplemental jurisdiction on the other claims, the legal questions, and discovery will be greatly expanded. In other words, the additional state-law claims would predominate over the narrow federal

11

question that anchors the Court's jurisdiction. *See id.* Accordingly, the Court will decline to exercise supplemental jurisdiction over Counts VI, VIII, and IX.

All the foregoing analysis leaves the case in two pieces: the greater portion heading to state court, while the much smaller portion remains in federal court. In light of the disparity, the Court would be willing to stay the case and permit Cadoura to first pursue his claims that belong in state court. If he chooses not to do so, the limited litigation of the federal claims will proceed here.

IV. <u>The Fire Department as a Party</u>

Defendants argue that the Fire Department is not a proper party to sue under any of the counts because it is simply a department of the city itself, rather than a separate entity. Cadoura claims that Defendants have not met their burden to show that the City of Riverview is a "municipal entity," and even if they had, the cases Defendants rely upon concern only § 1983 cases, not Title VII and ELCRA claims.

Both arguments are incorrect. First, the complaint itself describes the City of Riverview as "the municipal corporation in charge of operating and overseeing the Riverview Fire Department," Compl., ¶ 2, and it goes on to describe the Fire Department as "an agency of Defendant Municipality," Compl. ¶ 3. The Court must take these allegations as true, so Defendants need not prove otherwise. As for the § 1983 argument: it is true that Defendants exclusively cited § 1983 cases, but the rule does not hinge on that distinction. Defendants' cited cases rely upon other cases which themselves make clear that city departments cannot be sued, regardless of the cause of action. *See, e.g.*, *Michonski v. City of Detroit*, 162 Mich. App. 485, 490 (1987) (dismissing tort claims

against city department). The Court will therefore dismiss all counts against Defendant Riverview Fire Department over which it is exercising jurisdiction.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motions to dismiss [9, 12] are **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Counts II, III, V, VII, and X are **DISMISSED WITH PREJUDICE** as to all Defendants.

**IT IS FURTHER ORDERED** that Counts VI, VIII, and IX are **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

**IT IS FURTHER ORDERED** that Counts I and IV are **DISMISSED WITH PREJUDICE** as to Defendant Riverview Fire Department.

**IT IS FURTHER ORDERED** that the remaining Defendants shall have 21 days from the date of this order to file answers. The Court will hold a scheduling conference on **September 11, 2018 at 10:30 a.m.** and provide further instruction concerning a joint discovery plan under separate order.

**IT IS FURTHER ORDERED** that Plaintiff shall have 14 days from the date of this order to move for a stay of the case.

**SO ORDERED**.

                                                s/Stephen J. Murphy, III
                                                STEPHEN J. MURPHY, III
                                                United States District Judge

Dated: August 11, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 11, 2018, by electronic and/or ordinary mail.

                                                s/David P. Parker
                                                Case Manager